**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| CARLOS ARTURO PATINO-RESTREPO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-cv-1866 (TSC) |
| | ) | |
| DEPARTMENT OF JUSTICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Carlos Arturo Patino-Restrepo seeks documents under the Freedom of

Information Act ("FOIA") related to his own prosecution in a criminal case, as well as medical

and prison records related to his incarceration.  Plaintiff was convicted by jury of various counts

involving a conspiracy to import cocaine into the United States and internationally.  *See United*

*States v. Restrepo*, 547 F. App'x 34, 37 (2d Cir. 2013).  Defendants the Executive Office for

United States Attorneys ("EOUSA"), Immigration and Customs Enforcement ("ICE"), Bureau of

Prisons ("BOP"), Department of State ("State"), Federal Bureau of Investigation ("FBI"),

Department of Justice ("DOJ"), and Drug Enforcement Agency ("DEA") have all responded to

Plaintiff's request and now move for summary judgment.  For the reasons identified below,

Defendants' motion will be GRANTED.

## I.      BACKGROUND

Plaintiff's FOIA request, which was not materially different as to all five agencies,[1]

sought the following information:

---

[1] The list of names contains slight variations across the requests.

1

1. Any Document, which memorializes, summarizes, reports or comments on, or is evidence of any i) interview, ii) debriefing; iii) proffer; or iv) description of any of the occurrences in (i) - (iii) regarding the Listed Individuals which was conducted by the Department of Justice or its agents or conducted by or participated in by any other person or entity, regardless of whether an employee of the Department of Justice, in any Document within your files, records or custody or control.

2. Any Document which contains summarizes (sic), reports, comments upon or concerns Mr. Restrepo where such information regarding Mr. Restrepo was provided by or attributed to any of the Listed Individuals.

3. Any Document which contains information, summarizes, reports or comments upon whether Mr. Restrepo was (or was not) a participant, member of, or affiliated in any way with the Norte Valle Cartel.

4. Any Document concerning Bonnie Klapper and/or Romedio Viola relating or concerning their activities that concen (sic) Mr. Restrepo.

5. Any agreement-between any Listed Individual and the United States, Department of Justice, and/or any Assistant United States Attorneys, including, but not limited to, any United States or foreign prosecutor or foreign prosecutorial entity or representative.

6. All medical records and prison records concerning Mr. Restrepo in the possession, custody or control of the authorities in the Eastern District of New York.

(Wallace Decl., ECF No. 18-2 Exs. A, C; Myrick Decl., ECF No. 18-4 Ex. A; Cunningham Decl., ECF No. 18-5 Ex. 1; EOUSA Decl., ECF No. 18-6 Ex. A; Hardy Decl., ECF No. 18-8 Ex. A; Pineiro Decl., ECF No. 18-10 Ex. 2).  The "Listed Individuals," a list of 38 or 39 names and various aliases and nicknames, follow the text above in each request.  The agencies responded as set forth below.

## A. EOUSA

The DOJ Criminal Division, which received a January 28, 2014 FOIA request from Plaintiff through his attorney Jeffrey C. Hoffman, (ECF No. 18-8 Ex. A), re-routed the request to EOUSA on April 28, 2014.  EOUSA also received a FOIA request on June 20, 2014 directly from Plaintiff, containing the same language.  (EOUSA Decl., ECF No. 18-6 Ex. A).  EOUSA

consolidated the two identical requests, and informed Plaintiff that it had done so.  In October

2015, EOUSA released to Plaintiff and his attorney 12 full pages and 6 partly redacted pages

pursuant to FOIA exemptions 6 and 7(C).  (EOUSA Decl. ¶ 12).  EOUSA informed Plaintiff that

it had referred some responsive records to other agencies to review and respond directly to

Plaintiff.

      EOUSA told Plaintiff in November 2015 that it had processed 126 pages, previously

referred to ICE for review, and was withholding all 126 pages in full pursuant to FOIA

exemptions 5, 6, and 7(C).  (*Id.* ¶ 14).  EOUSA subsequently released partially redacted versions

of 16 of the 126 pages, which consisted of memoranda of interviews of Plaintiff conducted by an

Assistant United States Attorney and a law enforcement official.  (*Id.* ¶ 15).  Several weeks later,

EOUSA released an additional 16 partially redacted pages.  (*Id.* ¶ 16).  EOUSA also processed

16 pages that had previously been referred to DEA for review and ultimately determined to

belong to the United States Attorney's Office for the Eastern District of New York ("USAO-

EDNY"), and in December 2015 released 9 pages in full and withheld 7 pages in full pursuant to

FOIA exemptions 6 and 7(C).  EOUSA provided a *Vaughn* index describing the specific reasons

for exemption.  (*Id.* ¶ 21; Ex. D).

      EOUSA also directed USAO-EDNY, the office responsible for Plaintiff's criminal

prosecution, to search for responsive records.  (*Id.* ¶ 23).  USAO-EDNY searched its

computerized docketing case management system, the Legal Information Network System, and

located the name of the lead AUSA on Plaintiff's criminal case.  (USAO-EDNY Decl., ECF No.

18-7 ¶¶ 10-11).  The USAO-EDNY FOIA specialist obtained the lead prosecutor's files,

consisting of attorney litigation work product documents, correspondence, witness interview

statements, law enforcement records, and selected court filings not on the docket sheet, and sent

them to EOUSA for review.  (*Id.* ¶ 12-14).  EOUSA's declaration does not explicitly state

whether any of the records received from USAO-EDNY were released, but it appears from the

*Vaughn* index that all were withheld pursuant to FOIA exemptions 5 and 6 and 7(C).  (EOUSA

Decl. ¶ 21-36; Ex. D).

### B.  ICE

ICE directed Homeland Security Investigations ("HSI"), which investigates narcotics

smuggling, to search for records responsive to Plaintiff's request.  (Pineiro Decl., ECF No. 18-9

¶¶ 17, 33).  HSI searched its offices in Mexico City, New York, and Tampa.  (*Id.* ¶ 37).  It also

searched the Records and Disclosure Unit and Treasury Enforcement Communication System,

which maintain records relevant to ICE's mission.  (*Id.* ¶¶ 37, 38).  HSI used search terms

calculated to access investigation records, arrest records, and records related to Plaintiff's

criminal trial.  (*Id.* ¶ 38).

HSI provided responsive records to ICE's FOIA office, which reviewed the records and

released 30 pages in full, and 94 partially redacted pages, pursuant to Privacy Act exemption

(k)(2) and FOIA exemptions 6, 7(C), and 7(E).  (*Id.* ¶ 20).  Plaintiff appealed the ICE response,

and ICE's Office of the Principal Legal Advisor Government Information Law Division affirmed

the withholdings but remanded the FOIA request for a new or modified search.  (*Id.* ¶¶ 22-23).

After the second search, ICE provided Plaintiff an additional 40 pages, redacting 39 of the pages.

(*Id.* ¶ 24).  Plaintiff appealed again.  (*Id.* ¶ 26).  The Office of the Principal Legal Advisor closed

the appeal because the documents at issue had become the subject of federal litigation when

Plaintiff had filed this case.  (*Id.* ¶ 28).  ICE then discretionarily released some of the information

previously withheld in the 40 pages pursuant to 7(E).  (*Id.* ¶ 29).  ICE provided two *Vaughn*

indexes describing the redactions.  (*Id.* ¶ 46; ECF 18-10).

### C.  BOP

BOP also received an original request through Hoffman and a subsequent *pro se* request from Plaintiff.  It collected 732 pages in response to the original request, but closed the request after Plaintiff did not pay a duplication fee.  (Wallace Decl. ¶ 8).  BOP ultimately processed 773 pages of records responsive to Plaintiff's *pro se* request, releasing 100 in full and 673 with redactions pursuant to FOIA exemptions 6, 7(C), and 7(F).  (*Id.* ¶ 6).  BOP conducted its searches using Plaintiff's name and federal register number in the BOP Medical and Central Inmate File.  (*Id.* ¶ 11).  BOP did not submit a *Vaughn* index, but explained the nature of the withholding in its declaration.  (*Id.* ¶¶ 12-29).

BOP also processed 192 pages referred by EOUSA for review.  (Second Wallace Decl., ECF No. 18-3 ¶ 6).  It released in full 78 of those pages; released 102 with redactions pursuant to FOIA exemptions 6, 7(C), and 7(F); and withheld 12 pages in their entirety pursuant to the same exemptions.  (*Id.* Ex. D).

### D.  Department of State

Plaintiff previously requested his own records from State in 2011.  (Hackett Decl., ECF No. 9-1 ¶ 5).  State provided Plaintiff with 19 documents, and referred 8 to the DEA, 2 to the FBI, and 8 to the DOJ for review.  After State received the FOIA request that is the subject of this case, State advised Plaintiff that his request for information related to the Listed Individuals did not adequately describe the information he sought, and provided him with information about obtaining authorization for release of third-party information.  (*Id.* ¶ 9).  Plaintiff responded, limiting the time frame of his request to "1990 through the present date."  (*Id.* Ex. 4).

State's Office of Information Programs and Services ("IPS") determined that the State divisions reasonably likely to contain records responsive to Plaintiff's request were the Bureau of Diplomatic Security, the Office of the Legal Advisor, the Bureau of International Narcotics and Law Enforcement Affairs, the U.S. Embassy in Mexico City, the U.S. Embassy in Bogota, and

the Central Foreign Policy Records.  (State Decl., ECF No. 18-11 ¶ 9).  The Office of the Legal

Advisor searched both paper and electronic files of its Office of Law Enforcement and

Intelligence, which handles extradition matters, using search terms including Plaintiff's name,

the names and aliases listed in Plaintiff's request,[2] the names Bonnie Klapper and Romedio

Viola, and the terms "Norte Valle" and "Norte Valle Cartel."  (*Id.* ¶ 14).  It located 2 responsive

documents that had not been previously released to Plaintiff after his first FOIA request, and

released one with redactions.  (*Id.* ¶ 15).  It referred the other document to DOJ.  (*Id.*).  The

Bureau of Diplomatic Security searched electronic databases, the Personally Identifiable

Information shared drive, and email records.  The Office of Criminal Investigations, the Threat

Investigations & Analysis Directorate, and the Office of International Programs also conducted

searches using the same terms as the Office of the Legal Advisor, and found no responsive

documents.  (*Id.* ¶¶ 19, 28).  The Bureau of International Narcotics and Law Enforcement

Officers searched the paper and electronic files of its Office of Anticrime Program and Office of

Western Hemisphere Programs, using the same search terms, and located no responsive records.

(*Id.* ¶ 31).  The U.S. Embassy in Mexico conducted a search of its electronic files, including the

office shared drive, its Nonimmigrant Visa files, the Consular Consolidated Database, Fraud

Prevention Unit records, and email records, using the same search terms, and located no

responsive records.  (*Id.* ¶¶ 33-35).  The U.S. Embassy in Bogota conducted a similar search,

also including the American Citizens Service Plus database, and returned no responsive records.

(*Id.* ¶¶ 36-38).  Central Foreign Policy Records searched its Central File for the listed names.

(*Id.* ¶ 40).  Using a complex search approach, it found at least 21,314 documents; using the

---

[2] State did not use the aliases "Cuco" and "Pepe" as search terms; the court presumes those
nicknames are too common to return records reasonably likely to be responsive.

"Exact Name and Alias" approach it found at least 9,188 documents; and using the "Exact Name" approach it found at least 3,125 documents.  (*Id.*).  State informed Plaintiff that without any personally identifying information for the Listed Individuals, such as date of birth, place of birth, or social security number, the information he sought was exempt under FOIA exemptions 6 and 7(C).  (*Id.* ¶¶ 41-42).

State classified as confidential one document, C05132027, pursuant to Executive Order 13526.  (*Id.* ¶ 44).  From Plaintiff's first request, it re-released 11 documents in full, and 8 partially redacted documents, and withheld 4 documents in full.  (*Id.* ¶ 83).  State included a *Vaughn* index explaining the full or partial withholding of 13 documents—one from the current request and 12 from the previous request.  (*Id.*).

### E.  Department of Justice

State referred 4 pages of records to the DOJ's Criminal Division.  (Cunningham Decl., ECF No. 18-5 ¶ 5).  DOJ informed Plaintiff that the 4 pages were exempt pursuant to FOIA exemptions 5, 6, 7(C), and 7(D).  (*Id.* ¶ 7).  Plaintiff appealed to the Office of Information Policy; the court has no information as to the result or status of that appeal.

### F.  DEA

EOUSA forwarded 273 pages to DEA for review.  (Myrick Decl., ECF No. 18-4 ¶ 5).  DEA determined that FBI was the source of 19 of the pages, which were then forwarded to FBI.  (*Id.* ¶¶ 7-8).  DEA determined that 34 pages "were materials for which DEA could not locate the name Carlos Arturo Patino-Restrepo or any known aliases associated with his name," 13 pages were illegible, 29 pages were blank, 13 pages were "photos that DEA could not associate with the requester," and 47 pages were hand-written in Spanish and English and DEA could not associate them with Plaintiff.  (*Id.* ¶ 7).  DEA returned the 136 pages that were illegible, blank, or which it could not associate with Plaintiff to EOUSA.  (*Id.* ¶ 9).  DEA informed Plaintiff that

it was withholding the remaining 118 pages in their entirety pursuant to Privacy Act exemption

(j)(2) and FOIA exemptions 7(A), 7(C), 7(D), 7(E), and 7(F).  (*Id.* ¶ 10).

### G.  FBI

EOUSA referred documents to the FBI, which informed Plaintiff that the records were

exempt pursuant to FOIA exemption 7(A).  (Hardy Decl. ¶ 6).  FBI informed Plaintiff that the

records referred by DEA were similarly subject to FOIA exemption 7(A).  (*Id.* ¶ 8).

## II.    LEGAL STANDARD

Summary judgment is appropriate where the record shows there is no genuine issue of

"material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

*see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of*

*Columbia*, 298 F.3d 989, 991-92 (D.C. Cir. 2002).  In determining whether a genuine issue of

material fact exists, the court must view all facts in the light most favorable to the nonmoving

party.  *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "A fact is 'material' if a

dispute over it might affect the outcome of a suit under governing law; factual disputes that are

'irrelevant or unnecessary' do not affect the summary judgment determination."  *Holcomb v.*

*Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986)).  "An issue is 'genuine' if 'the evidence is such that a reasonable jury could

return a verdict for the nonmoving party.'"  *Id.* (quoting *Anderson*, 477 U.S. at 248).  The party

seeking summary judgment "bears the heavy burden of establishing that the merits of his case

are so clear that expedited action is justified."  *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d

294, 297 (D.C. Cir. 1987) (citations omitted).

FOIA cases are "typically and appropriately" decided on motions for summary judgment.

*Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 762 F. Supp.

2d 123, 130 (D.D.C. 2011) (citation omitted).  Upon an agency's request for summary judgment

in its favor on the grounds that it has fully discharged its FOIA obligations, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; only after an agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996).

In cases concerning the applicability of exemptions and the adequacy of an agency's search efforts, summary judgment may be based solely on information provided in the agency's supporting declarations. *See, e.g.*, *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001). Additionally, summary judgment is warranted on the basis of the agency's affidavit alone, if the "affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith . . . ." *ACLU*, 628 F.3d at 619. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Id.* (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)) (citation and internal quotation marks omitted). However, a motion for summary judgment should be granted in favor of the FOIA requester where "an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." *Coldiron v. U.S. Dep't of Justice*, 310 F. Supp. 2d 44, 48 (D.D.C. 2004) (quoting *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992)) (internal quotation marks omitted).

In considering the adequacy of an agency's search in response to a FOIA request:

> The question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate.* The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not

> surprisingly, upon the facts of each case.   In demonstrating the
> adequacy of the search, the agency may rely upon reasonably
> detailed, nonconclusory affidavits submitted in good faith."

*Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (citation omitted).   An

agency may prove the reasonableness of its search through a declaration of a responsible agency

official, so long as the declaration reasonably details the documents and justifications for

nondisclosure and is not controverted by contrary evidence or evidence of bad faith.   *Sanders v.*

*Obama*, 729 F. Supp. 2d 148, 155 (D.D.C. 2010), *aff'd sub nom. Sanders v. U.S. Dep't of*

*Justice*, No. 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011) (citing *Military Audit Project*

*v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).   Although the agency is not required to search

every record system, it must make a good faith effort to reasonably search systems that are likely

to contain the requested information.   *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir.

1990).   The agency declaration can demonstrate reasonableness by "setting forth the search terms

and the type of search performed, and averring that all files likely to contain responsive materials

(if such records exist) were searched."   *Sanders*, 729 F. Supp. 2d at 155 (citation and internal

quotation marks omitted).   Once an agency has provided adequate affidavits, the burden shifts to

the plaintiff to demonstrate that the agency did not make good faith search.   *Id*.   The presumption

of good faith "cannot be rebutted by 'purely speculative claims about the existence and

discoverability of other documents.'"   *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C.

Cir. 1991) (citation omitted).

## III.   ANALYSIS

### A.  EOUSA

The court finds that EOUSA conducted a reasonable search, focusing on the USAO-

EDNY where Plaintiff was prosecuted.   EOUSA referred a number of records to ICE, after

which ICE determined that "it had very little equities in the referred records," and EOUSA

processed them, treating the referral to ICE instead as a consultation.  (EOUSA Decl. ¶ 13-14).

EOUSA also referred records to BOP, FBI, and DEA, (*id.* ¶ 12 n.2), after which it processed

some of the records transferred to DEA.  (*Id.* ¶ 20).  USAO-EDNY searched several of its

databases, located the lead prosecutor on Plaintiff's case, and sent materials related to the case to

EOUSA for processing.  (USAO-EDNY Decl. ¶¶ 12-14).  Plaintiff does not challenge, and the

court finds sufficient, the adequacy of EOUSA's search.

EOUSA withheld records and parts of records pursuant to FOIA exemptions 5, for

attorney work product, and 6 and 7(C), for privacy.  EOUSA's *Vaughn* index states that a

number of records consisting of memoranda and summaries of interviews with witnesses in the

criminal case against Plaintiff were withheld because they constitute the work product of the

government's litigation team.  (*Vaughn* Index at 1, EOUSA Decl. Ex. D).  Accordingly, the

index states, there was no segregable information.  (*Id.*).

FOIA exemption 5 applies to "inter-agency or intra-agency memorandums or letters that

would not be available by law to a party other than an agency in litigation with the agency. . . ."

5 U.S.C. § 552 (b)(5).  Exemption 5 incorporates attorney work product privilege.  *See Dep't of*

*Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  Attorney work product

includes "mental impressions, conclusions, opinions, or legal theories of a party's attorney. . . ."

Fed. R. Civ. Proc. 26(b)(3)(B).  In the FOIA context, the D.C. Circuit has found that the attorney

work product exemption includes "attorney notes and witness statements" that "came into being

in anticipation" of quasi-judicial proceedings.  *See Martin v. Office of Special Counsel, Merit*

*Sys. Prot. Bd.*, 819 F.2d 1181, 1188 (D.C. Cir. 1987).  Plaintiff does not challenge, and the court

finds sufficient, EOUSA's invocation of exemption 5 with regard to the memoranda and

summaries of witness interviews conducted in anticipation of the criminal case against Plaintiff.

EOUSA's *Vaughn* index describes other withheld information as "[p]ersonally identifiable information that consists of the names of government attorneys on the litigation team, law enforcement personnel, and in a few instances names and photographs of witnesses" involved in the criminal case, and claims exemptions 6 and 7(C).  (*Vaughn* Index at 2).  Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 6 requires a court to "pursue two lines of inquiry," first determining whether the records at issues are personnel, medical, or similar files, and then determining whether their disclosure would "constitute a clearly unwarranted invasion of personal privacy," which requires balancing "the privacy interest that would be compromised by disclosure against any public interest in the requested information."  *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008) (citations and internal quotation marks omitted).  The Supreme Court has stated that the term "similar files" is to be construed broadly, and includes any "disclosure of information which applies to a particular individual . . . ."  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982).

Exemption (7)(C) exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . ."  5 U.S.C. § 552(b)(7)(C).  Exemption 7(C), while broader than exemption 6, also requires the court to "balance the . . . privacy interest against the public interest in disclosure."  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004) (citation omitted).  Once the court finds that "the privacy concerns addressed by exemption 7(C) are present," the requester must "establish a sufficient reason for the disclosure" to obtain the records.  *Id.* at 172.

To do so, the requester must show, first, "that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and, second, that "the information is likely to advance that interest." *Id.*

Plaintiff argues that there is a significant public interest in the withheld information because of possible government misconduct during the prosecution of his case.  The *Favish* Court held that where there are privacy interests that would exempt disclosure under exemption 7(C) and the public interest asserted is "to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, . . . the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174.

Plaintiff contends that the government characterized him during trial as the "boss" of the Norte del Valle Cartel despite statements by three members of the cartel, during interviews with the FBI, DEA, and Assistant United States Attorneys, that Plaintiff was not a member of the cartel.  Plaintiff suggests the government may have committed violations of its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and also "proceeded to trial on a theory that it knew—or should have known—was materially false."  (Opp. at 5, ECF No. 19). To the extent that Plaintiff maintains that disclosure is appropriate because of *Brady* violations, Plaintiff must allege something more than an "isolated, immaterial, or uncertain *Brady* violation," which does "not typically suffice for purposes of Exemption 7(C)." *Plunkett v. Dep't of Justice*, 2015 WL 5159489 at *8 (D.D.C. Sept. 1, 2015); *see also Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 388 (D.C. Cir. 2007) ("a single instance of a *Brady* violation in Boyd's case would not suffice to show a pattern of government wrongdoing as could overcome the significant privacy interest at stake").

Plaintiff has not presented evidence that a "blatant" *Brady* violation has occurred, *see Plunkett*, 2015 WL 5159489 at *8, or of a pattern of government misconduct.  Plaintiff submitted translations of statements from Juan Carlos Giraldo Franco, Orlando Sabogal Zuluaga, Jose Aldemar Rendon Ramirez, and Dagoberto Florez Rios,[3] but did not offer any evidence that the statements were withheld from him and his attorney, nor that the information would have impacted the outcome of his trial.  *See United States v. Andrews*, 532 F.3d 900, 905 (D.C. Cir. 2008) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)) ("A 'true *Brady* violation' has three components: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'").  Plaintiff has provided no evidence, such as testimony or documentary evidence, which could lead a reasonable person to believe that the government committed *Brady* violations in Plaintiff's case.

The court's conclusion is in accord with the Second Circuit's decision on Plaintiff's direct appeal of his criminal conviction.  The Second Circuit addressed Plaintiff's claims that the government suppressed information that three individuals, including Orlando Sabogal Zulaga, had made statements tending to disprove that Plaintiff trafficked drugs with the cartel, and found that there was no evidence of suppression, nor was it clear that Plaintiff would have called any of the men as witnesses had he had the allegedly suppressed information.  *Restrepo*, 547 F. App'x at 42-43.  The Court also found that Plaintiff failed to demonstrate any probability that the allegedly suppressed information would have affected the outcome of his case.  *Id.*

---

[3] The latter stated only that he had never personally had any criminal dealings with Restrepo, not that Restrepo was not a member of the Cartel.

To the extent Plaintiff claims the government committed misconduct by arguing at trial that he was a member of the cartel, separately from any *Brady* violations, that claim cannot overcome the privacy interests invoked by EOUSA.  Plaintiff cites *Napue v. Illinois*, 360 U.S. 264 (1959), in which the Supreme Court prohibited the government's knowing use of false evidence in a prosecution.  Taking Plaintiff's allegations as true, that several witnesses had told law enforcement officials that Plaintiff was not a cartel member, the government was nonetheless entitled to present to the jury evidence that would tend to prove that Plaintiff *was* a member of the cartel, and the jury was entitled to make its own factual finding on the matter.  Plaintiff acknowledges that "the Government proffered evidence during Plaintiff's [trial] that he was an alleged member of the" cartel, (Opp. at 4), indicating that the government did have evidence that tended to show Plaintiff's membership.  The statements Plaintiff describes by several individuals (who had all been prosecuted for narcotics trafficking) to the contrary were not dispositive facts; their evidentiary value was only as great as the credibility of the speakers.  The government's conduct—assuming the facts in the light most favorable to Plaintiff—clearly does not fall within *Napue*.  Plaintiff has not established that there is a significant public interest that merits disclosure of the records withheld by EOUSA pursuant to exemptions 7(C) and 6, and EOUSA has fulfilled its obligations under FOIA.

## B.  ICE

Plaintiff does not argue that ICE failed to conduct an adequate search or improperly withheld information pursuant to Privacy Act exemption (k)(2) and FOIA exemptions 6, 7(C), and 7(E). The court is independently satisfied that the search was adequate and the withholdings appropriate.  ICE invoked FOIA exemptions 6 and 7(C) to withhold names of Plaintiff's co-defendants and other targets of investigation, the names of jury forepersons who signed various superseding indictments of Plaintiff, the names of prosecuting attorneys, and the names of HSI

agents.  Plaintiff has identified no public interest in the information that would merit disclosure.

ICE also invoked FOIA exemption 7(E) as to information pertaining to non-public case numbers

and law enforcement techniques.  Exemption 7(E) permits withholding of law enforcement

records that "would disclose techniques and procedures for law enforcement investigations or

prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if

such disclosure could reasonably be expected to risk circumvention of the law . . . ."  5 U.S.C. §

552(b)(7)(E).  The court is satisfied that ICE's 7(E) withholdings were also appropriate, and ICE

has fulfilled its FOIA obligations.

### C.  BOP

Plaintiff does not challenge the adequacy of BOP's search, nor does he allege that BOP

improperly withheld information pursuant to FOIA exemptions 6, 7(C), and 7(F).  The court is

independently satisfied that the search was adequate and the withholdings appropriate.  BOP

withheld identifying information about third parties pursuant to exemption 6, and the direct-line

telephone extension of a law enforcement officer pursuant to exemption 7(C).  Plaintiff has

identified no public interest that outweighs the privacy interests of the third parties mentioned in

the records, or the law enforcement officer in the privacy of his direct phone number.  Exemption

7(F) allows withholding of law enforcement records that "could reasonably be expected to

endanger the life or physical safety of any individual . . . ."  5 U.S.C. § 552(b)(7)(F).  BOP

invoked exemption 7(F) to redact information pertaining to BOP staff names and identities, as

well as to the third parties named in Plaintiff's FOIA request.  The court finds BOP performed an

adequate search and withheld only exempt information.

### D.  State

Plaintiff challenges the adequacy of one aspect of State's search: the search of the Central

File of Central Foreign Policy Records for the Listed Individuals.  Plaintiff claims that State did

not satisfy its burden of demonstrating that it would be unreasonably burdensome to do a line-by-line review of the database search results in order to locate responsive documents from the Central File. He also challenges State's claim that the information he seeks would be exempt even if the search was not overly burdensome. Because Plaintiff seeks information pertaining to specific individuals, and has not identified a public interest that would warrant disclosure despite the privacy interests of those individuals pursuant to FOIA exemptions 6 and 7(C), the court finds that a line-by-line review of the database search results from the Central File would both be futile, because the information would be exempt, and unreasonably burdensome.

Plaintiff argues that State's claim that the line-by-line search would be unduly burdensome is vague; that State never asked him to narrow his request; that his request only seeks "records involving the 39 other Listed Individuals insofar as those records are germane to" his case; and that State has not explained why redactions or selective withholding would not suffice to protect the privacy interests of the 39 individuals. (Opp. at 7-8). Defendants respond, and the court agrees, that State is under no obligation to ask Plaintiff to narrow his request and that it is Plaintiff's duty to submit a request that "reasonably describes" the records sought, *see* 5 U.S.C. § 552(a)(3)(A)(i); that State has demonstrated with specificity the burdensome nature of the line-by-line review (*see* Supplemental State Decl., ECF No. 21-1); and that redactions, even if possible, would make the search more burdensome. The court notes that the language of Plaintiff's request does not state that he seeks only those records germane to his case, but rather broadly requests "any document" pertaining to an interview, debriefing, or proffer regarding the Listed Individuals.

The court finds that, with respect to documents pertaining to interviews, debriefings, or proffers regarding specific individuals, it is unclear how State could redact the personal

identifying information of those individuals in a way that would allow meaningful disclosure while protecting the privacy interests of those individuals.  It is one thing where an individual requests records that happen to contain personal identifying information, and the personal information can be redacted while still providing the requesting individual with the substantive information they seek; but another thing entirely where the object of the individual's request *is* the personal identifying information.  In the latter case, redaction does not make sense.

Plaintiff has not challenged the remainder of State's search or its withholding pursuant to FOIA exemptions 5, 6, 7(A), 7(C), 7(E), 7(F), and exemption 1, which allows withholding of matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order . . . ." 5 U.S.C. § 552(b)(1).  The court takes a deferential approach toward national security exemptions, *see Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009), and finds State's affidavit describing the classification of some information contained in document C05132027 in accordance with Executive Order 13526 sufficient to justify the withholding.  (State Decl. ¶¶ 45-50; 81-82).

State invokes exemption 5 for pre-decisional, deliberative information contained in a number of documents, and has adequately described the basis for the exemption.  (State Decl. ¶¶ 69-72).  The documents include a number of draft extradition requests with handwritten notes, which are protected by deliberative process privilege as well as attorney work product privilege. *See Klamath*, 532 U.S. at 8 ("deliberative process covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated") (internal quotations marks and citation omitted).  State invokes exemptions 6, 7(C), and 7(F) to withhold names and contact information of State

employees from several documents, which is appropriate given the absence of any overriding

public interest in that information. State has withheld information pursuant to exemptions 7(A)

and 7(E) concerning pending investigations related to Plaintiff's case as well as law enforcement

procedures and techniques involved in extradition. (State Decl. ¶¶ 67, 68, 79). The court finds

the exemptions appropriate and that State has fulfilled its disclosure obligations under FOIA.

### E.  DOJ

Plaintiff does not argue that DOJ improperly withheld information pursuant to FOIA

exemptions 5, 6, 7(C), and 7(D). DOJ was referred one document for processing by EOUSA,

which it describes as an email and attachment pertaining to Plaintiff's arrest and extradition.

(DOJ *Vaughn* Index). DOJ withheld the document as attorney work product pursuant to

exemption 5, and the court finds DOJ has demonstrated that the withholding was proper. DOJ

also invoked exemptions 6, 7(C), and 7(D)—which allows withholding of law enforcement

information that "could reasonably be expected to disclose the identity of a confidential source,"

5 U.S.C. § 552(b)(7)(D)—to redact information about third parties within the same single

document. The court finds those redactions would be proper pursuant to those exemptions, even

if the entire document were not exempt as work product, as there is no public interest in the

information that would outweigh the privacy interest.

### F.  DEA and FBI

Plaintiff claims the DEA and FBI have not provided sufficient information for the court

to determine the appropriateness of the agencies' withholding, nor have those agencies indicated

whether portions of the records were reasonably segregable. DEA withheld 118 pages that

consisted of Reports of Investigation, handwritten notes and charts, and summaries of

information provided by confidential sources, pursuant to FOIA exemptions 7(A), 7(C), 7(D),

7(E), and 7(F). (Myrick Decl. ¶ 21). DEA's *Vaughn* index clearly states which exemptions were

invoked for each withheld record, and describes the type of content withheld, including names and identifiers of third parties, witnesses, and law enforcement officers; law enforcement identifier codes used in investigation that are not public; and confidential source information. (*Id.* Ex. F).  Plaintiff has not identified any public interest that would weigh in favor of disclosure with regards to the privacy-related exemption, 7(C).  The court is satisfied that DEA has provided sufficient information to justify withholding under exemptions 7(A), 7(D), 7(E), and 7(F) relating to interference with law enforcement proceedings, protecting the identity of confidential sources, withholding records that disclose law enforcement techniques, and withholding information that could endanger individuals.[4]

FBI withheld in full 2 pages of records referred by State, and 19 pages referred by DEA (which had been referred to DEA by EOUSA), pursuant to exemption 7(A).  FBI's accompanying affidavit states that both records are "located in an investigative file which is exempt from disclosure."  (Hardy Decl. ¶¶ 6, 8).  The FBI stated that it was unable to provide a "description of the information withheld" because a specific description could identify the information that the FBI sought to protect by invoking the exemption.  (*Id.* ¶ 9).  It explained that the information was "contained in files pertaining to the FBI's investigation of one or more Colombian crime organizations," which was ongoing at the time of the declaration.  The records consisted of interview forms, which the FBI uses to "memorialize interviews," and computer database printouts of FBI and local law enforcement record checks.  (*Id.* ¶¶ 17-18).  It is clear that the records withheld are law enforcement records as to which exemption 7 applies, and the court finds FBI's justification of its withholding pursuant to 7(A) adequate.  The court also finds

---

[4] Plaintiff complains that DEA's *Vaughn* index does not reference the Privacy Act exemption invoked in DEA's declaration, but the court need not consider this argument because withholding is justified under FOIA's exemptions.

FBI's assessment that the information could "potentially jeopardiz[e] current or prospective investigative and/or prosecutions" reasonable.  (*Id.* ¶ 20).  It described "how" the investigation would be harmed: disclosure would have a chilling effect on witnesses and could reveal the scope of the investigation, alerting potential targets.  (*Id.* ¶¶ 21-22).  FBI's description satisfies the requirements of *Campbell v. Department of Health & Human Services*, 682 F.2d 256, 265 (D.C. Cir. 1982).  FBI noted, and the court agrees, that withholding the information would also be appropriate pursuant to exemption 6 and exemption 7(C), as Plaintiff has not identified an overriding public interest and the privacy interest of individuals named in the records is strong. Exemptions 7(D) and 7(E) also apply.

Plaintiff maintains that FBI's use of a declaration instead of a separate *Vaughn* index precludes summary judgment, but the court finds the declaration is sufficient to explain FBI's withholding.  *See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (stating that it is the function of a *Vaughn* index, and not the form, that matters, and a detailed affidavit can suffice).

### G.  Segregability

An agency is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  Plaintiff has not offered any evidence to "successfully rebut[] this presumption."  *Id.* Each agency conducted a segregability analysis and released information where it was segregable from exempt information.  (Hardy Decl. ¶¶ 43-44; EOUSA Decl. ¶ 25; Pineiro Decl. ¶¶ 74-77; Wallace Decl. ¶¶ 12, 29; Second Wallace Decl. ¶¶ 7, 21; Cunningham Decl. ¶ 27; Myrick Decl. ¶ 62; State Decl. ¶ 84).  The court therefore finds that the agencies have all complied with FOIA's segregability requirement.

## IV.      CONCLUSION

For the reasons stated above, summary judgment for the Defendants will be granted.

A corresponding order will issue separately.

Dated: March 30, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge